UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMESTOWN SHORES, LLC, et al.,

      Plaintiffs,

                                         Case No. 1:23-cv-849

v.

                                         Hon. Hala Y. Jarbou

JAMESTOWN CHARTER TOWNSHIP,

      Defendant.

_____/

## OPINION

Plaintiffs Jamestown Shores, LLC ("JS") and Quincy Street Ventures ("QSV") filed this lawsuit claiming Defendant Jamestown Charter Township ("Township") conducted an unconstitutional taking by enforcing §§ 3.24 and 19.16 of its zoning ordinance. (Am. Compl. 9-10, 11-12, ECF No. 8.) Plaintiffs claim these provisions, which require either an easement or an in-lieu payment for Township to construct bike paths, violate the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 10, Section 2 of the Michigan Constitution. (*Id.*) Plaintiffs bring as-applied and facial challenges to the bike path provisions and seek restitution for JS's in-lieu payment. (*Id.* at 12.)

Before the Court are Defendant's two motions for partial summary judgment. The first motion for partial summary judgment seeks to prevent Plaintiffs from recovering JS's in-lieu payment. (ECF No. 28.) The second motion for partial summary judgment requests that the Court reject Plaintiffs' facial challenge to the bike path provisions. (ECF No. 42.) For reasons discussed herein, the Court will deny the motion for partial summary judgment related to restitution for JS's in-lieu payment and grant the motion for partial summary judgment related to the facial challenge.

# I. BACKGROUND

Plaintiffs are two companies located in Township that sought development permits.  (Am. Compl. 4.)  They have overlapping ownership involved in the permit application process for both entities.  (VanderSlik Aff. 1, ECF No. 34-4.)  Applicants seeking Township site plan approval for certain development permits are subjected to sections 3.24 and 19.16 of Township's ordinances. While §§ 3.24 and 19.16 have been amended several times since Plaintiffs' first site plan application, in each of the various iterations, the provisions allow Township to force developers to either grant Township an easement to build a bike path on the development, force the developer to build a bike path on the development, or force the developer to submit an in-lieu payment that Township would use to construct a bike path elsewhere.  (11/11/2019 Ordinance §§ 3.24, 19.16, ECF No. 8-4; 10/19/2020 Ordinance §§ 3.24, 19.16, ECF No. 34-2; 7/3/2024 Ordinance §§ 3.24, 19.16, ECF No. 43-2.)

QSV was the first of these entities to seek site plan approval for a development.  Township required QSV to submit an in-lieu payment to support future bike path construction as a condition for site plan approval.  (7/30/2020 Appeal Op. 1-2, ECF No. 34-1.)  QSV refused to make this in-lieu payment, claiming it would be an unconstitutional taking.  (11/14/2022 Letter to Township 1, ECF No. 8-3.)  Shortly after Township communicated the in-lieu payment requirement to QSV, JS met with Township officials to discuss a separate site plan approval.  (Letter to JS 1, ECF No. 8-1.)  JS executives, having just heard about the in-lieu payment requirement for QSV's development, indicated the in-lieu payment was preferred to an easement on the JS development. (VanderSlik Aff. 3.)  JS did not intend to waive any constitutional claims or other challenges to this in-lieu payment by selecting the in-lieu payment over an easement.  (*Id.*)  JS made an in-lieu payment of $94,078.50 to avoid an easement on the development.  (*Id.*)  Township has used JS's payment, in conjunction with other funds, to construct bike paths in another area of Township.

(*See* Van Haitsma Aff. 2, ECF No. 29-2 (explaining that Township used JS's payment, other payments in the same account, and additional non-bike path funds, to finance the Riley Street Path project).)

After Plaintiffs applied for site plan approval, Township amended §§ 3.24 and 19.16 of the ordinance.  (*See* 10/19/2020 Ordinance §§ 3.24, 19.16.)  Specifically, Township amended the initial operating clause that dictated when the bike path provisions would apply.  Originally, §§ 3.24.B and 19.16.B stated, in relevant part:

> [T]he Township *may* require an applicant seeking [plan review and approval] . . . to (1) grant the necessary easements for the construction of Bicycle Paths; and either (2) construct Bicycle Paths as further provided . . . below; or (3) make a financial contribution to the Township for use by the Township . . . for Bicycle Paths.

(11/11/2019 Ordinance §§ 3.24.B, 19.16.B (emphasis added).)

The amendment changed the language of §§ 3.24.B and 19.16.B to read, in relevant part:

> [T]he Township *shall* require an applicant seeking [plan review and approval] . . . to (1) grant the necessary easements for the construction of Bicycle Paths; and either (2) construct Bicycle Paths as further provided . . . below; or (3) make a financial contribution to the Township for use by the Township . . . for Bicycle Paths.

(10/19/2020 Ordinance §§ 3.24.B, 19.16.B (emphasis added).)

On August 14, 2023, Plaintiffs filed their complaint claiming violations of their Fifth Amendment and Fourteenth Amendment rights.  (ECF No. 1.)  Plaintiffs' claims included facial and as-applied challenges to §§ 3.24 and 19.16.  Plaintiffs also included a separate restitution claim for JS's in-lieu payment.  (*Id.*)  On September 11, 2023, Plaintiffs amended their complaint to add an additional claim under the Michigan Constitution.  (ECF No. 8.)

Township filed a motion for partial summary judgment on April 25, 2024. (ECF No. 24.) The motion sought a narrow ruling on whether Plaintiffs can seek restitution for JS's in-lieu payment.

On June 17, 2024, Township amended §§ 3.24 and 19.16, once again changing the language in §§ 3.24.B and 19.16.B. (Notice of Amendment, ECF No. 43-3.) The amendment undid the previous change to the provisions' initial operative clause, shifting the language from "*shall* require" back to "*may* require." (7/3/2024 Ordinance §§ 3.24.B, 19.16.B.) The amendments, which went into effect on or around July 3, 2024, made additional changes, clarifying when the ordinances applied to certain developers. (*Id.*) Two weeks later, on July 18, 2024, Township filed a second motion for partial summary judgment focusing exclusively on Plaintiffs' facial challenges to the ordinance language (noting the language in question was now different due to the amendments). (ECF No. 42.) The Court will address both motions for partial summary judgment.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

4

## III. ANALYSIS

### A. Partial Summary Judgment with Respect to Returning Jamestown Shores LLC's Payment In-Lieu

Township contends that if Plaintiffs' claims can proceed, JS is not entitled to seek recovery the $94,079 payment in-lieu as a matter of law.[1]  The Court disagrees for the reasons below.

#### 1. Doctrine of Laches

Township argues that the doctrine of laches applies, preventing JS from getting its money back.  "In this circuit, laches is 'a negligent and unintentional failure to protect one's rights.'" *United States v. City of Loveland*, 621 F.3d 465, 473 (6th Cir. 2010) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)).  "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id.*

#### (a) Whether Plaintiffs Bring a Claim in Equity

As Plaintiffs argue, "laches is purely an equitable doctrine." *United States v. Weintraub*, 613 F.2d 612, 619 n.22 (6th Cir. 1979) (establishing this foundational aspect of the doctrine of laches to hold that the defense only applies to defendants with "clean hands").  Laches is, therefore, a defense to "claims of an equitable cast." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (1962).  For a laches defense to apply to JS's claim for recovery of the in-lieu payment, Plaintiffs' claim must be equitable, seeking "those categories of relief that were typically available in equity." *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Plaintiffs argue the restitution they seek is not an equitable remedy, so there is no need to even engage with the doctrine's requirements.  (Pls.' Restitution Br. 22, ECF No. 34.)  The precedent

---

[1] Plaintiffs claim this is the amount of the in-lieu payment.  (VanderSlik Aff. 3.)  Defendants offer conflicting numbers, but appear to have made a typographical error in changing $94,079 to $94,097.  (Van Haitsma Aff. 1-2.)

defining equitable relief, and the language Plaintiffs themselves use to bring their claim and make arguments, indicate otherwise.[2]

The "basic contours" of what constitutes equitable relief "are well known." *Id.* at 217.  The "typical" equitable remedies include "injunction, mandamus, and restitution." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993).  However, some remedies, like restitution, were available in both courts of law and courts of equity; whether a restitution claim "is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Knudson*, 534 U.S. at 213 (internal punctuation omitted).

"[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.  Simply put, if a defendant "hold[s] particular funds that, in good conscience, belong to" a plaintiff, then the claim is equitable.  *Id.*  Alternatively, if the plaintiff

> [can]not assert title or right to possession of particular property, but . . . might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit.

*Id.* at 213 (internal emphasis, quotations, and citation omitted).

Plaintiffs frame their claim as "unjust enrichment/restitution," and demand, as relief, that the Court "[m]andate *return* of the in-lieu fees paid by Jamestown Shores, plus appropriate interest." (Am. Compl. 10, 12 (emphasis added).)  JS seeks a "refund" of the specific funds they paid Township.  Count II of their amended complaint even acknowledges that "[a] suit seeking the return of specific funds wrongfully collected or held may be maintained in equity."  (*Id.* at 10.)

---

[2] While the Court determines Plaintiffs' restitution claim lies in equity, if this claim was legal in nature, the outcome would be the same—Township has no laches defense here.

They do not seek a general judgment for the value of the benefit in Count II, they seek the *return* of their "money back"; money they claim was wrongfully collected.  (Pls.' Restitution Br. 2, 23.) JS does not seek a general judgment imposing liability on Township as a result of a contract (principles of assumpsit).[3]  To the contrary, JS claims it never should have had to give Township this money—as if any contract for payment would be void, not breached.  They do not seek liability for damages, even though they use that language in their brief (*id.* at 21);[4] they seek the return of specific money, which is a restitution claim in equity.[5]

Township claims they have spent JS's money and therefore cannot return it.  (Def.'s Restitution Br. 8, ECF No. 29.)  But this does not make JS's claim one of general liability, seeking damages from Township's general assets.  When a plaintiff seeks specific funds, and the defendant has spent those funds, the Sixth Circuit instructs courts to "follow the money."  *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020).  "Any 'commingling' of wrongfully possessed funds and rightfully possessed funds" maintains the posture of a claim in equity.  *Id.* (citing *Montanile v. Bd. of Tr. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 149 (2016)).[6]

When JS delivered payment to Township, the funds were put in escrow—which effectively created a separate bike-path fund; however, these funds were commingled with general assets. (Van Haitsma Aff. 2, ECF No. 29-2.)  Township used approximately $161,338.67 from the escrow

---

[3] Of note, "[a]ssumpsit has been abolished as an independent cause of action in Michigan.  *Halpern 2012, LLC v. City of Ctr. Line*, 806 F. App'x 390, 393 n.2 (6th Cir. 2020).

[4] "Decisions from [the Supreme] Court confirm that a remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts."  *Liu v. SEC*, 591 U.S. 71, 80.  Merely substituting the term "damages" where "restitution" is proper does not render a claim legal as opposed to equitable.  *Id.* at 80 n.2 (discussing how a claim for damages was equitable because it was brought in restitution).

[5] Plaintiffs argue, in part, that JS's in-lieu payment was not proportional to the social cost.  (Pls.' Restitution Br. 15.) The payment was, according to Plaintiffs, not the proper amount for just compensation, indicating a general judgment for damages to compensate a taking would be a different amount than the in-lieu payment.  This restitution payment is, therefore, a separate claim than seeking just compensation or damages resulting from the taking.

[6] *Knudson* categorizes a plaintiff's claim on specific property as if "an equitable lien" exists.  534 U.S. at 213.  The existence of an actual lien is not necessary to bring a claim in equity.  *See id.*

account (including the $94,097 payment from JS) and an additional $179,025.33 to fund the Riley Street path project.[7]  (*See id.*)  Thus, Township commingled JS's funds with other government funds.  While the eventual return of JS's payment may not come from the fund in escrow, it still reflects a claim for the specific funds JS gave to Township that were commingled with other funds.  It is a claim in equity so the Court will proceed with arguments related to the doctrine of laches.

### (b) Whether the Doctrine of Laches Bars Plaintiffs' Restitution Claim

As indicated above, "[a] party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it."  *City of Loveland*, 621 F.3d at 473.

Township argues that the timeline "is illustrative of [a] lack of diligence" by JS.  (Def.'s Restitution Br. 7.)  "With respect to the first element, there is a strong presumption that a plaintiff's delay in bringing suit is reasonable as long as the analogous statute of limitations has not lapsed." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 466 (6th Cir. 2004).  The statute of limitations period for unjust enrichment is six years.  Mich. Comp. Laws § 600.5813; *see Williams v. Chase Bank*, No. 15-10565, 2015 WL 4600067, at *4 (E.D. Mich. July 29, 2015) (discussing statute of limitations on unjust enrichment claim for property improperly bestowed upon defendant).  JS delivered the in-lieu payment to Township on November 2, 2021.  (Van Haitsma Aff. 2.)  Because the statute of limitations had not expired when Plaintiffs filed their claim, Township "must overcome the strong presumption of reasonable delay" in order to successfully assert a laches defense.  *Coal. for Gov't Procurement*, 365 F.3d at 466-67.

---

[7] While Township's numbers include the typographical error, the $18 difference does not change the fact that the funds were commingled.

In an effort to overcome this presumption, Township argues that JS "had plenty of opportunity—in fact, years—in which" they could have brought this claim.  (Def.'s Restitution Br. 7.)  But, as discussed, the laches doctrine affords JS those years because the statute of limitations permits them, and "[o]nly rarely should laches bar a case before the analogous statute has run." *Coal. for Gov't Procurement*, 365 F.3d at 466.  Township cannot overcome the presumption by merely pointing out the facts from which that presumption arises.  Instead, Township attempts to jump ahead to prejudice, as if this second element of laches can overcome a defendant's inability to satisfy the first.  Not only did Township fail to establish prejudice by merely pointing to the potential hardship from returning a payment after significant delay,[8] it never satisfied the crucial first element.  As the Supreme Court established, "[f]or laches, timeliness is the essential element." *Petrella*, 572 U.S. at 685.  When a defendant fails to prove a plaintiff "unreasonably delayed in filing suit," then "[t]he defendant['s] laches defense . . . fails as a matter of law." *Coal. for Gov't Procurement*, 365 F.3d at 467.  Township failed to prove the elements of laches, so its defense fails as a matter of law.

### 2. Doctrine of Estoppel

Township argues that JS's claim for recovery is barred by estoppel.  Specifically, Township invokes promissory estoppel.  This is the wrong tool to take out of the estoppel toolbox.  Township may have meant to invoke equitable estoppel.  As Michigan courts have explained, "the major distinction between equitable estoppel and promissory estoppel is that equitable estoppel is available only as a defense, while promissory estoppel can be used as a cause of action for damages." *Hoye v. Westfield Ins. Co.*, 487 N.W.2d 838, 842 (Mich. Ct. App. 1992).  Promissory

---

[8] Delay constitutes prejudice when a claim is stale. *City of Loveland*, 621 F.3d at 474.  That is not the case here and Township raises no other arguments to show prejudice.

estoppel has four elements: (1) a promise, (2) the promisor reasonably should have expected the promise to induce definite and substantial action from the promisee, (3) the promisee actually relied on the promise, and (4) enforcing the promise would avoid injustice. *Id.* Equitable estoppel requires an intentional or negligent misrepresentation that causes prejudice. *Id.*[9] Here, Township improperly invokes promissory estoppel as a defense.

While mistakes happen, Township had the opportunity to clarify and assert a proper equitable estoppel defense. It chose not to take it. Instead, in its reply brief, Township "reiterated" the elements of promissory estoppel and asserted it as a defense. (Def.'s Restitution Reply Br. 6, ECF No. 37.) A defendant's motion for summary judgment is not the proper vehicle to bring a promissory estoppel claim. Township cannot make a claim for promissory estoppel here. Thus, its reliance on that doctrine is misplaced.

### 3. Unconstitutional Conditions Doctrine

"The government does not always directly interfere with constitutional rights. It sometimes indirectly interferes with them by offering a benefit that it has no duty to provide on the condition that a party waive a right." *Knight v. Metro. Gov't of Nashville & Davidson Cnty.*, 67 F.4th 816, 823 (6th Cir. 2023). The unconstitutional conditions doctrine "place[s] limits on the government's power to extract waivers of constitutional rights in this way." *Id.* at 824 (quoting *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013)).

If "the government imposes 'a condition for the grant of a building permit'" on developers, and that condition, if it was required, would constitute a taking, then the unconstitutional conditions doctrine is triggered. *Knight*, 67 F.4th at 827 (6th Cir. 2023) (quoting *Dolan v. City of*

---

[9] While Township did not properly assert this defense, even if they did, they did not show JS made any misrepresentations regarding the in-lieu payment. (Def.'s Restitution Br. 8-12.)

*Tigard*, 512 U.S. 374, 386 (1994)).  Township's condition on site plan approval—forcing developers to either grant an easement for bike paths or make an in-lieu payment—constitutes a taking, so the unconstitutional conditions doctrine applies here.  *See id.* at 827-28 (discussing the same condition for sidewalks).

Township claims that the unconstitutional conditions doctrine does not apply because JS voluntarily complied with the condition.  (Def.'s Restitution Br. 12.)  The Court disagrees.  In fact, *Knight* stands for the opposite: regardless of whether the developer succumbs to the pressure of the condition, the unconstitutional conditions doctrine applies.  67 F.4th at 828.

Township's argument that the unconstitutional conditions doctrine prevents JS from seeking restitution is unpersuasive.  The motion for partial summary judgment related to JS's restitution will be denied.

**B. Partial Summary Judgment with Respect to Facial Challenges to the Ordinances**

As an initial matter, the Court must define the scope of Township's motion for summary judgment regarding which version of the ordinance to apply, because the parties disagree on the motion's contours.  Township requests "that the amended versions . . . of the Township Zoning Ordinance . . . be applied to Plaintiffs' claims."  (Def.'s Facial Challenge Mot. 3.)  Plaintiffs respond by discussing that, as it relates to their as-applied challenges, the Court should use the version of the ordinance that was active when Township evaluated Plaintiffs' development applications.  (Pls.' Facial Challenge Br. 7, ECF No. 47.)  Township, in its reply brief, clarifies that it only seeks relief related to Plaintiffs' facial challenges.  (Def.'s Facial Challenge Reply Br. 1-2, ECF No. 49.)  The Court will evaluate Township's motion according to the clarification, only pertaining to the facial challenges.

As explained above, Township amended §§ 3.24 and 19.16 after the suit was filed and shortly before filing its second motion for partial summary judgment.  The amended version of the

ordinance, which passed on June 17, 2024, took effect on or around July 3, 2024.  This amended version remains in effect.

Township argues that the Court is required to apply the amended version of its ordinance to Plaintiffs' claims of facial unconstitutionality.  It further argues that such claims fail as a matter of law and challenges to the previous version of the ordinance are moot.  The Court agrees that it must apply the amended version of the ordinance.  However, this does not mean that Plaintiffs' facial challenge to the previous version of the ordinance is moot.

### 1. Applying the Amended Version of the Ordinance to Claims of Facial Unconstitutionality

Township seeks summary judgment on Plaintiffs' facial challenges to the bike path provisions of the ordinance.  If a challenged policy is amended during litigation, "courts apply the law as it exists at the time of the decision."  *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 692 (6th Cir. 2022); *see also Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 783 (W.D. Mich. 2022) (explaining that for "declaratory or injunctive relief," the Court will "apply the law which was in effect at the time of the decision by the trial court").  While "a change in the law tends to eliminate the requisite case-or-controversy . . . not every amendment automatically moots a claim."  *Kenjoh Outdoor*, 23 F.4th at 692 (internal quotation and citation omitted).  When courts determine whether to treat a facial challenge to an outdated version of a policy as a challenge to the current version, the question is whether "the changes do not remove the harm to the plaintiff." *Id.* (internal quotation and citation omitted).  A case is not moot, and the challenge may proceed against the amended policy, "if the new [policy] imposes the same burdens on the plaintiff" as the previous version.  *Id.*

Plaintiffs claim that the amended, current version of the ordinance imposes the same burden as the previous version.  They argue the difference, changing "shall" to "may," does

nothing to alleviate their alleged burden—the "taking" that comes in the form of either an easement or an in-lieu payment.  Even though it is a facial challenge at issue, for this threshold jurisdictional assessment, the Court asks whether the ordinance still burdens Plaintiffs in the same manner.  *See id.* at 693 (determining the plaintiff's facial challenge was not moot because the burden on the specific plaintiff was the same).

Township claims the amendment ensures officials must act with discretion, but it also argues they used this discretion to apply the previous version of the ordinance to Plaintiffs.  (Def.'s Facial Challenge Br. 2 ("The Township has nonetheless always interpreted the bike path provisions to be discretionary.").)  Whether the previous version of the bike path regulation was discretionary is analyzed below; relevant here is that Township, operating under the alleged discretion of the previous version of the ordinance, imposed these provisions on Plaintiffs.  If Township maintains that, when given the discretion to impose these requirements, Plaintiffs are burdened, then an amended version of the ordinance that clarifies this discretion does not change how Plaintiffs were burdened.  *See Kenjoh Outdoor*, 23 F.4th at 693 (holding that because the amendment did not change how the Ohio Department of Transportation would apply the statute, the burden on the plaintiff remained the same).  Because the burden on Plaintiffs is unchanged, their claim is not moot, and the Court will analyze a facial challenge to the current version of the ordinance.

### 2. Facial Challenge to the Amended Version of the Ordinance

"In order to satisfy the requirements of Article III standing, a plaintiff must show a concrete and particularized injury-in-fact that is fairly traceable to the defendant's actions and that is likely to be redressed by a favorable decision of the court."  *Doe*, 78 F.4th at 942.  "And a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought . . . because standing is not dispensed in gross."  *Id.* (internal quotations and citations omitted).  "There are two potential theories of injury—'actual' present injury and 'imminent' future injury."  *Id.*  The

injury "must be present . . . at the time the complaint is filed." *Id.* (internal quotation and citation omitted). "[C]ertain harms readily qualify as concrete injuries under Article III . . . such as . . . monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). "A plaintiff typically faces little difficulty satisfying standing's three elements when the plaintiff is the object of the government action challenged in the suit." *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 902 (6th Cir. 2024) (internal quotation and citation omitted).

Plaintiffs remain in the midst of the application process for their respective developments. They are the subject of the policy they challenge, as Township will enforce it against them. They face monetary harm or a potential invasion of property rights. They properly assert an injury that would be caused by Township's ordinance, and if the Court determines the ordinance is unconstitutional, it could redress the injuries by enjoining enforcement. Plaintiffs have standing for this facial challenge to the amended ordinance.

"[A] plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotations and punctuation omitted). Contriving "some conceivable set of circumstances" that render an ordinance unconstitutional is insufficient to succeed in a facial challenge. *Bonner v. City of Brighton*, 848 N.W.2d 380, 389 (Mich. 2014) (internal quotations omitted). "In determining whether a [legislative act] is facially invalid, we must be careful not to go beyond the [legislative act]'s facial requirements and speculate about 'hypothetical' or

'imaginary' cases." *Wash. State Grange*, 552 U.S. at 449-50. "Exercising judicial restraint in a facial challenge 'frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of [legislative acts] in areas where their constitutional application might by cloudy.'" *Id.* at 450. Determining facial invalidity can "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.* The Court evaluates the amended version of Township's ordinance with these principles in mind.

Both parties rightfully approach Township's ordinance as a legislative act. *See Albright v. City of Portage*, 470 N.W.2d 657, 660-61 (Mich. Ct. App. 1991) (determining that ordinances are legislative acts in Michigan). Their disagreement comes from whether Township officials have discretion to apply the ordinance. Looking at the language of the amended ordinance, it is clear Township has discretion to apply §§ 3.24 and 19.16—they need not apply it to all applicants seeking approval of site plan and development permits.

For facial challenges, the Court starts with the language of the act in question. The ordinance reads, in relevant part:

> In furtherance of the objectives set forth in Section 3.24.A, the Planning Commission *may* require (except as stated in Section 3.24.I) an applicant subject to or seeking site plan review under the provisions of Chapter 17 (including, but not limited to site plan review for a site condominium in accordance with Chapter 27 or a private road in accordance with Section 3.29), to do the following, as a condition of site plan approval:
>
>> 1. . . . [G]rant the Township the necessary easement(s) for the construction of Bicycle Paths in accordance with Section 3.24.D; and,
>>
>>> a. . . . [C]onstruct a Bicycle Path(s) in all or part of the easement(s) granted to the Township, as further provided in Section 3.24E; or,
>>>
>>> b. . . . [P]erform either one of the following options, with the applicant having the discretion as to which option is selected:
>>>
>>>> (i) Construct a Bicycle Path(s) in the easement(s) granted to the Township . . . ; or,

> (ii) Make a financial contribution to the Township for use by the Township . . . for Bicycle Path construction (i.e., a "payment in lieu).
>
> c. If the applicant does not voluntarily make a selection under subsection b, above, then the Planning Commission shall have the authority to select and require one of the two options.

(7/3/2024 Ordinance § 3.24.B (emphasis added).)  The same language regarding the Township's responsibilities appears in § 19.16, with authority granted to the Township Board rather than the Planning Commission ("Commission").  (*Id.* § 19.16.B ("[T]he Township Board *may* require an applicant [to abide by the easement conditions or submit an in-lieu payment].") (emphasis added).)

When a legislative act uses the term "may," it presumably grants discretion to the operative noun.  *E.g.*, *Township v. Rice*, 984 N.W.2d 71, 72 (Mich. 2022) (explaining that the term "may" grants "discretion, rather than imposing a mandatory condition").

There are some situations in which "'may' can have the effect of 'must' or 'shall'" given the context.  *Fink v. City of Detroit*, 333 N.W.2d 376, 379 (Mich. Ct. App. 1983); *see also, e.g.*, *Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755, 764-65 (6th Cir. 2023) (interpreting "may" as "obligatory, not discretionary" given the context).  However, this is not one of those situations, and the context confirms this notion.

The current version of the ordinance is an amended version that changes specific language in §§ 3.24 and 19.16.  The previous version of the ordinance instructed that the relevant Township authority (either the Commission or the Township Board) "*shall* require an applicant [to abide by the easement conditions or submit an in-lieu payment]."  (10/19/2020 Ordinance §§ 3.24, 19.16 (emphasis added).)  The current version reflects a change from "shall" to "may."  When a legislative body amends "shall" to "may," the Court must interpret the change as an intentional shift from a mandatory obligation to a discretionary enforcement decision.  *Cf. In re Forfeiture of*

16

*Bail Bond*, 852 N.W.2d 747, 751 (Mich. 2014) (holding that when a legislative body changes "may" to "shall" in a legislative act, courts must interpret the amendment as a deliberate shift from permissive to mandatory obligations).  Plaintiffs argue that Township officials and engineers "repeatedly stated that" the previous versions of the ordinance that used "may," still "'require[d]' bike-path contributions—without exception."  (Pls.' Facial Challenge Br. 10.)  However, even if those city officials expressed these opinions, the Court must look to what the "ordinance's text provides."  *Moskovic v. City of New Buffalo*, No. 23-1165, 2023 WL 8651272, at *4 n.4 (6th Cir. Dec. 14, 2023).

The text shows an amendment from "shall" to "may"—an amendment from a mandatory obligation to a discretionary one.  In other words, Township amended its ordinance to grant the Commission and Township Board discretion to either require, or not require, an applicant to comply with the requirements in §§ 3.24 and 19.16.  Because this discretion allows Township authorities not to impose any conditions (either granting an easement or in-lieu payment) on an applicant, the ordinance is not, in every possible circumstance, unconstitutional.  If the applicant need not either grant an easement or submit an in-lieu payment, there is no "taking."  Given that the ordinance is not unconstitutional in every circumstance, the current version survives the facial challenge.

### 3. Facial Challenge to the Version of the Ordinance at the Time of the Complaint and Amended Complaint

As noted above, Township changed the language in §§ 3.24 and 19.16 during the course of this litigation.  When Plaintiffs filed their claim, the language of the statute was different.  Even though the Court has evaluated a facial challenge to the current statute, this does not require Plaintiffs to sacrifice their challenge to the outdated version.  *See Doe v. Univ. of Mich.*, 78 F.4th 929, 941 (6th Cir. 2023).  The Court will continue with Plaintiffs' challenge to the outdated version

17

if it has jurisdiction to do so.  *See Doe*, 78 F.4th at 945-46.  Of particular emphasis is the risk that Township amended an unconstitutional policy to evade review, only to return to the unconstitutional policy after litigation.  *See id.* at 946, 948; *Kenjoh Outdoor*, 23 F.4th at 692 (warning of the injustice resulting from allowing defendants to avoid review by amending a statute).

### (a) Jurisdiction

Standing, ripeness, and mootness are jurisdictional issues that the Court may address in any order it chooses.  *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023).  The Court chooses to address mootness first, as mootness addresses the central question of whether Township may revert back to the previous version of the ordinance, a threshold issue to determine whether the outdated policy presents risk of harm to Plaintiffs even with a new one in effect.

*Mootness*

In evaluating a challenge to an outdated version of a policy, when an updated, amended version is in place, "[t]he party asserting mootness bears a heavy burden and must show that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Doe*, 78 F.4th at 946 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).  "When considering whether challenged conduct"—which includes implementing unconstitutional policies—"can reasonably be expected to occur, we take into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Id.*  Changing a policy is considered a cessation. *Id.*  "The passage of new legislation or the repeal of challenged legislation presumptively moots the case unless there are clear contraindications that the change is not genuine." *Id.* (internal punctuation, citation, and quotation omitted).  "When regulatory changes are implemented with legislative-like

procedures or formal processes, the government need not do much more than simply represent that it would not return to the challenged policies." *Id.*  However, if the policy change appears to be in response to litigation, the defendant continues to defend the previous version of the policy, and the defendant fails to affirmatively state they will not revert back to the previous policy, then the defendant "has not satisfied its burden to establish that its conduct could not reasonably be expected to reoccur." *Id.*

Township has changed its bike path ordinance twice since first interacting with Plaintiffs, changing "may" to "shall," and then changing "shall" back to "may."  The changes appear to be motivated by this litigation.

Throughout this litigation, Township was on notice that Plaintiffs were raising a facial challenge to the statute, focusing on the "shall" language in §§ 3.24 and 19.16 of the ordinance. (*See* Am. Compl. 5-6, 9, 11.)  On April 25, 2024, Township filed its first motion for partial summary judgment (addressed above) focusing exclusively on JS's claim for restitution.  Then, on June 17, 2024, Township amended its bike path provisions, changing "shall" to "may."  Those amendments took effect on or around July 3, 2024.  On July 18, 2024, Township filed its second motion for partial summary judgment focusing exclusively on Plaintiffs' facial challenge, relying on the new "may" language that took effect merely two weeks prior.  This timing is, at best, suspicious.  Township waited to address Plaintiffs' facial challenge until after it could amend the language Plaintiffs targeted.  Township did not provide any rationale for this amendment. Township even contends that the language does not change its interpretation of the statute; it merely strengthens its position in this litigation.  (Def.'s Facial Challenge Br. 2-3, ECF No. 43.) Township has not demonstrated that this change from "shall" to "may" was motivated by anything other than litigation.  Because the amendment appears to be motivated by litigation, Township

continues to defend its previous version of the ordinance (by asserting it had discretion even with the "shall" language), and Township has not affirmatively stated they would keep the amended language, Township has failed to satisfy its burden to establish that they would refrain from amending the policy back to the previous version.

In *Doe*, the Court of Appeals concluded that a university similarly did not satisfy this burden. However, because a different case determined the older policy was unconstitutional, the court determined that it was unreasonable to presume the university would reimplement a policy it knew was improper.

No courts have reviewed Township's previous version of the ordinance. And given Township's continued insistence that the previous version was constitutionally compliant, the Court is not convinced that the Township would refrain from reverting back to the previous version. Plaintiffs' challenge to the previous version of the ordinance is, therefore, not moot—it is reasonable to conclude that the harm they allege could recur.

*Standing*

The standing analysis for Plaintiffs' challenge to the previous version of the ordinance is similar to that of the amended version. The injury "must be present . . . at the time the complaint is filed." *Doe*, 78 F.4th at 942 (internal quotation and citation omitted). Plaintiffs faced monetary harm or a potential invasion of property rights, resulting from the challenged ordinance, at the time of filing. This injury would be redressed if the Court prohibited Township from enforcing the ordinance. Plaintiffs therefore have standing for the facial challenge to the previous version of the ordinance.

*Ripeness*

Much like standing, ripeness is concerned with the justiciability of a case when it is filed. *See Doe*, 78 F.4th at 944-45 (evaluating ripeness based on when the plaintiff filed his lawsuit). Ripeness concerns whether "the harm asserted has matured sufficiently to warrant judicial intervention," not whether is has overmatured. *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). "Of primary importance is whether the issues tendered are appropriate for judicial resolution, and, if so, the degree of hardship to the parties if judicial relief is denied before the claim is allowed to ripen further." *Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019) (internal quotation and citation omitted).

When an injury has already occurred, ripeness is not an issue. *See Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 476-77 (6th Cir. 2023). When Plaintiffs filed their lawsuit, their alleged injury against Township already occurred, and it stemmed from the version of the policy in place at that time (the version before the recent amendments). Such an issue is appropriate for judicial resolution. Further, there would be hardship in dismissal before the claim could ripen further, because the claim had already ripened. Waiting for the claim to ripen any further would be an indefinite delay, nullifying a claim that warrants judicial review.

With jurisdiction to determine Plaintiffs' facial challenge to the previous version of the policy, the Court continues to the merits.

### (b) Merits

As discussed above, "[f]acial challenges are disfavored." *Wash. State Grange*, 552 U.S. at 450. To succeed in a facial challenge to this ordinance, Plaintiffs must show that it is unconstitutional in all applications.

Once again, the parties disagree as to whether the language of the ordinance is mandatory (requiring the Commission to impose an easement or collect an in-lieu payment on all covered

applicants) or discretionary (granting the Commission discretion to determine when the ordinance should apply).  Township claims, in an apparent attempt at concession, that the earlier version of the ordinance is ambiguous.  (Def.'s Facial Challenge Br. 2 ("[T]he Township acknowledges that the text of §§ 3.24 and 19.16, as they were in effect at the time that Plaintiffs filed their Complaint, supported a discretionary application in [§ 3.24.C] . . . and a mandatory application in §§ 3.24B and 19.16B].").)  "Ambiguity" is generous here.

The operative clause that dictates Township's discretion to enforce §§ 3.24 and 19.16 is in both §§ 3.24.B and 19.16.B.  As indicated above, this clause uses "shall."  But §§ 3.24.C and §§ 19.16.C also use "shall."  The only potential discretion in §§ 3.24.C and 19.16.C relates to whether Township should impose an easement or demand an in-lieu payment.  (7/3/2024 Ordinance.)

Township presents no statutory interpretation argument supporting a permissive rather than mandatory interpretation, nor any evidence that it treated the ordinance as anything other than a requirement.  As a "general rule . . . 'shall' is a mandatory term, not a permissive one."  *In re Forfeiture of Bail Bond*, 852 N.W.2d at 750.  Even beyond the mandatory language, there is no evidence in the record suggesting that Township exercised discretion.

The Court reaches the same conclusion—that "shall" prescribes a mandatory obligation—after examining the context.  When examining the context to interpret legislative language, courts can give "significant weight" to amendments of that text.  *Seatrain Shipbuilding Corp. v. Shell Oil Co.* 444 U.S. 572, 596 (1980).  As discussed above, on June 17, Township amended the ordinance, changing "may" to "shall."  The Court "presume[s] that the [legislative body] is familiar with the principles of statutory construction," so the Court "presume[s] that when the [legislative body] amended [the ordinance], changing 'may' to 'shall,' it intended 'shall' to mean what [the Michigan Supreme Court] has held that 'shall' means since at least 1850."  *See In re Forfeiture of Bail Bond*,

852 N.W.2d at 751.  "While the term 'may' is permissive, not mandatory, . . . the term 'shall' . . . is a mandatory term, not a permissive one." *Id.* at 750.  When a legislative body changes "may" to "shall," continuing to "construe[] the statute as if it still read[s] 'may'" incorrectly renders the amendment "nugatory." *Id.*  The Court will give the amendment its full effect, as is required here. *Id.*

However, a mandatory obligation to apply the bike path provisions does not render the ordinance facially unconstitutional.  The Sixth Circuit "has developed a three-step unconstitutional conditions test for permit conditions." *Knight*, 67 F.4th at 825.  The Court asks whether "the condition would qualify as a taking if the government had directly required it," and if the answer is yes, then the permit condition is a taking for Fifth and Fourteenth Amendment purposes. *Id.* The government can engage in this "taking" behavior if it can "show a 'nexus' between the condition and the project's social costs," and "a 'rough proportionality' between the condition and the project [to show] the condition's burdens on the [applicant] approximate the project's burdens on society." *Id.*  Courts apply this test to both federal and state constitutional claims for challenges to permit conditions. *E.g.*, *AFT Mich. v. State of Michigan*, 866 N.W.2d 782, 799-800 (Mich. 2015).

Township establishes the burdens on society it seeks to address in § 3.24.A (with identical language in § 19.16.A).  Township claims the bike path provisions help further public health and safety goals related to traffic congestion, pollution, and accessibility.  While there are certainly situations in which a requirement to enforce the bike path provisions on all site plan approvals leads to unconstitutional applications (either because the development does not burden these public health and safety concerns or an in-lieu payment to fund a bike path somewhere else in the city does not satisfy the nexus and rough proportionality elements), there are sets of fact in which

23

Township can constitutionally apply the bike path provisions.  Some developments will burden Township's bike path system, and an easement or in-lieu payment can, if properly individualized, offset the burdens.  Because there are sets of facts in which the ordinance is constitutional, the facial challenges fail.

## IV. CONCLUSION

Plaintiffs may continue with their claim that seeks the return of JS's in-lieu payment. Township's motion for partial summary judgment related to the return of the in-lieu payment will be denied.  However, the Court will grant Township's motion for partial summary judgment related to the facial challenges.  Plaintiffs' claims related to the as-applied challenge remain in the case.

The Court will enter an order consistent with this Opinion.

Dated: September 20, 2024                    /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE