UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMESTOWN SHORES, LLC, et al.,

    Plaintiffs,

v.

    Case No. 1:23-cv-849

    Hon. Hala Y. Jarbou

JAMESTOWN CHARTER TOWNSHIP,

    Defendant.
_____/

# OPINION

Plaintiffs Jamestown Shores, LLC ("JS") and Quincy Street Ventures ("QSV") filed this lawsuit claiming Defendant Jamestown Charter Township ("Township") conducted an unconstitutional taking through its enforcement of sections 3.24 and 19.16 of its zoning ordinances. (Am. Compl. 9-10, 11-12, ECF No. 8.) Plaintiffs claim these provisions, which require an easement on the proposed development's property and either the construction of a bike path or an in-lieu payment for Township to construct a bike path elsewhere, violate the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 10, Section 2 of the Michigan Constitution. (*Id.*) Plaintiffs brought as-applied and facial challenges to the bike path provisions. (*Id.* at 12.) They seek restitution for JS's in-lieu payment, declaratory relief, injunctive relief, and attorneys' fees. (*Id.*) The Court dismissed Plaintiffs' facial challenge, as hypothetical circumstances exist in which the bike path provisions can pass constitutional muster. (9/20/2024 Op. & Order, ECF Nos. 51-52.)

Before the Court is Plaintiffs' motion for summary judgment on the as-applied challenge to Township's bike path provisions. (ECF No. 54.) For the reasons discussed herein, the Court will grant the motion in part.

## I. BACKGROUND

Plaintiffs are two companies located in Township that sought development permits. (Am. Compl. 4.) They have overlapping ownership involved in the permit application process for both entities. (VanderSlik Aff. 1, ECF No. 34-4.) Applicants seeking Township site plan approval for certain development permits must comply with sections 3.24 and 19.16 of Township's zoning ordinances. While sections 3.24 and 19.16 have been amended several times since Plaintiffs' first site plan application, in each of the various iterations, the provisions allow Township to require developers to grant Township an easement on their property and either build a bike path on or adjacent to the development, or force the developer to submit an in-lieu payment that Township could use to construct a bike path elsewhere. (11/11/2019 Zoning Ordinances §§ 3.24, 19.16, ECF No. 8-4; 10/19/2020 Zoning Ordinances §§ 3.24, 19.16, ECF No. 34-2; 7/3/2024 Zoning Ordinances §§ 3.24, 19.16, ECF No. 43-2.)

QSV was the first of these entities to seek site plan approval for a development. Township required QSV to submit an in-lieu payment to support future bike path construction as a condition for site plan approval. (7/30/2020 Appeal Op. 1-2, ECF No. 34-1.) QSV refused to make this in-lieu payment, claiming it would be an unconstitutional taking. (11/14/2022 Letter to Township 1, ECF No. 8-3.) Township would not approve QSV's application until it submitted the in-lieu payment. Shortly after Township communicated the payment requirement to QSV, JS met with Township officials to discuss a separate site plan approval. (Letter to JS 1, ECF No. 8-1.) JS, having just heard about the in-lieu payment requirement for QSV's development, indicated to Township that it preferred making an in-lieu payment over granting an easement on the JS

2

development.  (VanderSlik Aff. 3.)  JS did not intend to waive any constitutional claims or other challenges to this in-lieu payment by selecting the in-lieu payment over an easement.  (*Id.*)  JS made an in-lieu payment of $94,078.50 to avoid building a bike path on the development.  (*Id.*)  Township explained that its calculation of the in-lieu payment was based on the projected traffic that the JS development would generate.  (JS Plan. Comm'n Rationale, ECF No. 9-2, PageID.731-736.)

Township has used JS's payment, in conjunction with other funds, to construct bike paths in another area of Township—Riley Street—around two miles from the JS site.  (Van Haitsma Aff. 2, ECF No. 29-2.)  Township had already planned to build a bike path in this area before JS submitted its application.  (*See* Proposed Township Recreation Map 2019-2024, ECF No. 55-1, PageID.1239.)  It is unclear from the record whether Township required Plaintiffs to grant an easement on their properties in addition to submitting the in-lieu payment.

QSV and JS claim that the in-lieu fee, when used to construct a bike path in another area of Township, constitutes a taking under the Fifth and Fourteenth Amendments.  Township asserts that the in-lieu fee is an exercise of land-use police powers.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material facts.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### III. ANALYSIS

The government may not "take" private property without providing just compensation. U.S. Const. amend. V. There are obvious takings in which the government assumes control over the entirety—or a portion—of private property. *See, e.g.*, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831 (1987). But not all governmental interference with private property rights constitutes a taking. Certain regulations that force property owners to "internalize the negative externalities of their conduct" reflect an exercise of police power; these governmental acts do not implicate the Takings Clause. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 605 (2013).

When the government places conditions on development permits, it walks the line that distinguishes an exercise of police power from a taking. If the permit condition merely "forc[es] an owner to internalize the costs (the 'negative externalities') that a development will impose on others," it fits under police powers and survives constitutional challenge. *Knight v. Metro. Gov't of Nashville & Davidson Cnty.*, 67 F.4th 816, 824 (6th Cir. 2023). However, if the permit condition represents the government "try[ing] to leverage its monopoly permit power to pay for unrelated public programs on the cheap[,] . . . forcing a few people to bear the full cost of public programs that the public as a whole should pay for," the government has engaged in a taking and must provide just compensation. *Id.* at 825 (internal quotations and citations omitted).

The Court uses the "three-step unconstitutional-conditions test" to analyze permit conditions and determine whether they operate as a proper exercise of police power or as a guise

4

for "out-and-out extortion."[1]  *Id.* at 825, 835.  First, the Court "asks whether the condition would qualify as a taking if the government had directly required it. . . .  If not, no takings problem exists." *Id.* (citing *Koontz*, 570 U.S. at 612).  If the act would qualify as a taking if directly required, under step two, the government must show an essential nexus exists between the condition and the project's social costs.  *Id.* (citing *Nollan*, 483 U.S. at 837).  After establishing a nexus, under the final step of the test, the government must establish a "'rough proportionality' between the condition and the project."  *Id.* (citing *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994)).  In short, when a local government establishes an essential nexus and rough proportionality between the permit condition and the negative externalities of the proposed development, it is exercising land-use police powers; without the essential nexus and rough proportionality, the government is engaging in a taking for which it must provide just compensation.  *Koontz*, 570 U.S. at 605-06.

Requiring a developer to grant an easement and either build a bike path or pay an in-lieu fee would be a taking if applied directly rather than as a condition.  *See Dolan*, 512 U.S. at 384-85.  Neither party argues otherwise about step one of the unconstitutional-conditions test.  The parties disagree as to steps two and three.  Plaintiffs argue that Township can establish neither an essential nexus nor rough proportionality for the in-lieu payments and therefore must provide just compensation.  Township argues it can establish both, which would defeat the constitutional challenge.  However, Township cannot establish the essential nexus between the permit condition and Plaintiffs' developments' negative externalities.  Therefore, Township has violated the Takings Clause.

---

[1] Courts apply this test to both federal and Michigan state constitutional claims for challenges to permit conditions. *E.g.*, *AFT Mich. v. State*, 866 N.W.2d 782, 799-800 (Mich. 2015).

**A. Essential Nexus**

To determine whether an essential nexus exists between a permit condition and a project's social costs, the Court starts with the purpose of the condition. *Nollan*, 483 U.S. at 837. The permit condition, as applied to the developer, must actually advance the purported purpose. *Id.* And as the Court of Appeals clarified, the permitting condition must advance the purpose by targeting the specific negative externalities of the project in question. *Knight*, 67 F.4th at 825 (explaining that "the government must impose the condition *because of those costs* and not for other reasons" (emphasis added) (referring to a specific project's social costs)). In essence, to satisfy the nexus prong of the test, the permit condition must advance the government's purpose by generating a benefit to the public that is connected to the specific project's social costs. *Id.* (citing *Nollan*, 483 U.S. at 841).

Township instituted the bike path provisions of its zoning ordinances to "provide a safer location" for travel in an effort to promote health and reduce congestion. (*See* 11/11/2019 Zoning Ordinances §§ 3.24, 19.16; 10/19/2020 Zoning Ordinances §§ 3.24, 19.16; 7/3/2024 Zoning Ordinances §§ 3.24, 19.16.) The provisions sought to create a contiguous bike path network across Township and separate bike travel from motor vehicles. To do so, Township imposed a condition on certain development permits: in order to obtain approval, these developers must help Township build bike paths. For some developers, this meant granting Township an easement on the proposed development. Township could build a bike path on the proposed development to connect to the existing network. As discussed in the Court's previous opinion addressing the facial challenge, when the bike path provisions are applied in this hypothetical manner, the nexus between permit condition and negative externalities is clear. The government advances its purposes (creating a contiguous bike path network/separating bike travel from motor vehicles) by imposing a permit condition (an easement on which Township can build a bike path) that is connected to the specific

development's negative externalities (interference with a contiguous bike path network/increased traffic in areas on or adjacent to the development).

But that is not how Township applied the provisions to Plaintiffs. Here, Township required Plaintiffs to pay a fee instead of granting an easement. Township then used the funds to construct bike paths in other areas of Township. While constructing bike paths in other areas advanced Township's interests in creating a contiguous bike path network and separating bike travel from motor vehicles, the permit condition did not target Plaintiffs' specific negative externalities.

Plaintiffs' developments did not make it necessary to build bike paths in other parts of Township. Plaintiffs' developments did not bring residents to those other areas. Nor did Plaintiffs' developments prevent Township from building bike paths in those areas. Had Township used the funds to build a bike path on or adjacent to Plaintiffs' developments, this *could* be a different case.[2]

Instead, the scheme forced a small number of developers to pay for the construction of bike paths across Township—a public asset that will benefit the public at large with an attenuated connection to Plaintiffs' developments.[3] All Township residents are equally burdened when roads do not have bike paths. All Township residents equally benefit when roads do have bike paths. By making these developers pay for bike paths in other areas, Township either forced Plaintiffs to pay for bike paths designed to benefit the general population, or pay for bike path paths that target

---

[2] Despite arguing the contrary, Township seems to understand this point, as the current version of the zoning ordinances uses in-lieu funds to connect the development to an existing bike path within one-half mile of the development. (7/3/2024 Zoning Ordinances §§ 3.24, 19.16.) If no such bike path exists in that one-half mile radius within five years of tendering the in-lieu payment, Township will return the funds to the developer. (*Id.*) The developer will only end up paying for a bike path that connects the development to the existing bike path network. The version of the zoning ordinances applied to Plaintiffs did not include such limitations. (*See* 11/11/2019 Zoning Ordinances §§ 3.24, 19.16; 10/19/2020 Zoning Ordinances §§ 3.24, 19.16.)

[3] Township argues it has established this connection by estimating the traffic these developments will generate, and then assessing a fee corresponding to the estimated traffic increase. But these estimates speak to the proportionality of the fee as it relates to the estimated traffic increase, not whether the traffic increase is sufficiently connected to a bike path in a specific, other area of Township. The nexus prong of the test is based on the connection to a project's externalities, not whether the permit condition anticipated the correct *amount* of social cost. *Knight*, 67 F.4th at 825. The nexus and proportionality prongs are separate and distinct; proportionality does not prove a nexus. *Id.*

other developments' negative externalities. Either way, it constitutes an unconstitutional condition. *See Armstrong v. United States*, 364 U.S. 40, 49 (1960) ("[T]he Fifth Amendment[] . . . was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."); *Knight*, 67 F.4th at 825 ("[T]he government must impose the condition because of [the project's social costs] and not for other reasons.").

Take QSV, the more obvious case. There is already a bike path adjacent to the QSV development site. According to Township, the QSV development would generate negative externalities by generally increasing traffic. Under its logic, because the people living in the development will likely use the Township's bike paths, as these residents bike in other areas where no such bike path exists, they will be forced into dangerous traffic patterns. (QSV Plan. Comm'n Rationale, ECF No. 9-1, PageID.722.) But as indicated above, a general, hypothetical increase in traffic around the QSV development does not justify forcing a developer to pay the cost for Township's plan to build a bike path in another area. The permit condition is not sufficiently connected to negative externalities specifically attributable to building the QSV development.

While the QSV development may generate an influx of bikers, which underscores the need to close gaps in the bike path network across town, the development does not create the problems that Township hopes to mitigate with this permit condition. If the QSV development generates more bikers, then for the permit condition to satisfy the nexus requirement, the permit condition should target the costs of increased bike traffic rather than the negative externalities of other projects that attract people to areas without bike paths. Township does not establish that building the QSV development will increase traffic in another area. Township concedes that because there is a bike path adjacent to the QSV development site, the in-lieu payment will address other

developments' negative externalities. (*See id.*) When a permit condition seeks to offset negative externalities not attributable to the specific project, it represents an unconstitutional condition.

Building the QSV development would not necessitate a bike path in another area, nor would it create a gap in the existing bike path network. It would not hinder Township's ability to "provide a safer location" for residents to travel by bike. Forcing QSV to close gaps in the bike path network—located in a different area of Township—is forcing QSV to pay for public benefit (bike paths used by residents at-large) rather than offsetting its development's negative externalities (more bikers). *See Nollan*, 483 U.S. at 841 ("The [government] may well be right that [its permit condition] is a good idea, but that does not establish that the [plaintiffs] alone can be compelled to contribute to its realization.") Conditioning the approval of QSV's application on the payment of an in-lieu fee, for the purpose of building a bike path in a different area of Township, is not sufficiently connected to the development's costs. Thus, conditioning permit approval on an in-lieu fee for a bike path constructed in another area constitutes a taking. *See Knight*, 67 F.4th at 826 (explaining that the unconstitutional-conditions test applies when a government denies a permit until the developer consents to the condition). Township may not apply the bike path provisions in this manner.

Now take JS. There is no bike path connected to the proposed JS development site. Township claims the JS development will generate negative externalities because the people living in the development will need to use personal vehicles to travel. (JS Plan. Comm'n Rationale, PageID.731-734.) That may be so. But forcing JS to fund a bike path more than two miles away does not connect the public benefit to the JS development's negative externalities. JS residents must still either use a motor vehicle or travel by bike, facing the dangers of mixed-use roads.

9

The benefit—a bike path in another area—is not sufficiently connected to the JS development's negative externalities. Building JS's proposed development would not necessitate a bike path by Riley Street. Building JS's proposed development does not bring residents to Riley Street. In fact, Township planned the Riley Street bike path construction before JS submitted its development application. Even if Township anticipated general development, it knew not of the JS development's negative externalities when it proposed the construction. Using JS's in-lieu fee to build a bike path on Riley Street could not have been an effort to offset the JS development's specific negative externalities. By using the fee to build a bike path on Riley Street, the fee is connected to developments that attract individuals to Riley Street. Township cannot sufficiently connect JS to an increase in Riley Street traffic.[4] Thus, the permit condition operated as a mechanism to fund a general Township benefit that should have been borne by the public as a whole or by those developments for which the Township can establish a nexus between the negative externalities and traffic on Riley Street. The permit condition did not offset the JS development's specific negative externalities. It therefore lacked the requisite essential nexus and constituted an unconstitutional condition.

Township defends its imposition of the in-lieu fee on JS by characterizing it as a constitutionally permissible "pay-it-forward" program where developers pay fees that cover the costs of other developments' negative externalities. According to Township, eventually, a future development will pay for the bike path in front of JS. But, given the nature of the developments' negative externalities, this merely confirms that Township is forcing a small number of developers to pay for a general benefit unconnected to that project's specific costs. Such permit conditions

---

[4] In regards to the anticipated traffic increase from the JS development, Township only makes reference to a potential traffic increase on Perry Street. (JS Plan. Comm'n Rationale, PageID.731-734.)

fail the unconstitutional-conditions test. *Knight*, 67 F.4th at 825 ("[T]he government must impose the condition *because of* [a specific project's] *costs* and not for other reasons." (emphasis added)).

Bit by bit, these developers will fund the bike paths across the city, connected to other projects' negative externalities. Township contends that the location of the bike path does not matter so long as the fee corresponds to the anticipated traffic increase attributable to the development. However, as discussed above, offsetting the anticipated traffic increase with the correct fee (in terms of amount) speaks to rough proportionality. The essential nexus analysis determines whether the permit condition targets the development's specific negative externalities; even a fee for the correct amount[5] does not properly advance the purported government interest. *See Nollan*, 483 U.S. at 841. Because this permit condition targets general traffic increases across Township, attributable to other causes rather than the direct negative externalities of Plaintiffs' proposed developments, it constitutes a taking. The location of the benefit speaks to its connection to the development's externalities. The Court cannot ignore it. Localities cannot "give the public a benefit unrelated to the [development's] costs." *Knight*, 67 F.4th at 825 (citing *Nollan*, 483 U.S. at 841).

Township references *Dolan*, in which the Supreme Court determined the essential nexus prong was satisfied for a permit condition that forced a developer to build a pathway that happened to be consistent with preexisting city plans. 512 U.S. at 377. But the consistency with preexisting plans did not establish the nexus. The development in *Dolan* generated negative externalities related to the traffic the development would attract. 512 U.S. at 379-80, 382-83, 387-88 (focusing on the flooding and traffic impact to land on and adjacent to the development). A pathway on or

---

[5] Because Township did not satisfy the nexus prong of the unconstitutional-conditions test, the Court does not reach the question of whether the imposed fees satisfy the rough proportionality prong.

11

adjacent to the developer's property was sufficiently connected to its negative externalities, not a pay-it-forward program in which the developer's fee offset a different development's negative externalities. The permit condition's consistency with preexisting plans is not a probative factor to satisfy the nexus prong. In *Dolan*, the permit condition's connection to the development's externalities was apparent due to the location of the pathway (on or adjacent to the development's property), overcoming the fact that the government planned the pathway ahead of time.

Township also argues *Dolan* supports its position that an essential nexus exists between the developments' anticipated traffic increase and a fee to build a bike path in another area of Township. Not so. As discussed above, in *Dolan*, the Supreme Court found a nexus where the permit condition applied to space on or adjacent to the development. 512 U.S. at 379-80, 382-83, 387-88. The Supreme Court only discussed how the development, a retail site, would certainly attract traffic to the development, not to another area in the locality.

Further, *Dolan* notes that *if* the development "encroached on existing greenway space in the city, it would have been reasonable to require petitioner to provide some alternative greenway space for the public either on her property or elsewhere." 512 U.S. at 394. But this statement merely implies that an essential nexus exists for off-site benefits when the development physically interferes with the locality's interest (in *Dolan*, the interest was providing green space). Only when the development's physical occupation of space interferes with the government's interest can an off-site benefit satisfy the essential nexus prong. In such situations, the off-site benefit would advance the government's purpose through a condition that is sufficiently connected to the development's negative externalities (the physical interference with on-site conditions). As discussed above, Plaintiffs' developments do not encroach on projected bike path locations, nor do they prevent Township from building bike paths on or adjacent to the planned contiguous bike

12

path network.  Plaintiffs' developments do not interfere with Township's purpose in a manner that would create a nexus between an off-site permit condition and the negative externalities.

Township references a number of cases in which courts find an essential nexus between fees and the acquisition of off-site park land.  *See, e.g.*, *Puce v. City of Burnsville*, 997 N.W.2d 49, 56, 58 (Minn. 2023).  In such cases, the negative externality (physically occupying space that would otherwise be a park) is connected to the permit condition (creating usable space that offsets the development's physical occupation of usable space).  However, another case Township cites, supposedly in support of analogizing off-site parks and off-site paths, distinguishes the acquisition of off-site park land—an interest inherently impacted by a physical development—from building off-site pathways.  *See Mira Mar Dev. Corp. v. City of Coppell*, 421 S.W.3d 74, 87, 94-95 (Tex. Ct. App. 2013) (finding an essential nexus for off-site parks but requiring compensation for an off-site sidewalk).  Off-site benefits are not connected to the negative externality of a specific project unless the development's physical presence inherently interferes with the permit condition's purpose.

The Court of Appeals agreed with this Court's interpretation that *Dolan* limits the imposition of off-site permit conditions.  *See Knight*, 67 F.4th at 836 ("*Dolan* likely had in mind conditions requiring the dedication of a sidewalk on the owner's own property as part of an existing sidewalk network in the area. . . . [Not] sidewalks miles away.").  Township points out that *Knight* addressed *Dolan* in dicta, but the nonbinding nature of the Court of Appeals' analysis does not render it incorrect.  *Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 875 (6th Cir. 2017).  *Dolan* analyzed a permit condition that impacted land on and adjacent to the development's property and limited permit conditions for off-site benefits to circumstances in which the development physically interfered with the government's relevant interests.  *Dolan* does not

13

support Township's argument for a permit condition that creates a benefit miles away when the development does not physically interfere with the government's interests.

Township's permit condition bestowed upon the public a benefit that was not sufficiently connected to Plaintiffs' specific negative externalities. No essential nexus existed. Township may advance its interest in creating bike paths, but not with in-lieu fees to construct paths in areas miles away. This permit condition, as applied to Plaintiffs, was a taking; Township must provide just compensation for it.

### B. Just Compensation and Injunctive Relief

Given the focus on the constitutionality of the permit condition in the parties' briefing, the Court will require additional briefing regarding the proper remedy for each plaintiff.

### IV. CONCLUSION

As applied to Plaintiffs, Township did not establish an essential nexus between the permit condition and the developments' negative externalities. The permit condition was an unconstitutional condition, triggering the Takings Clause. Township did not provide just compensation for this taking. Thus, Plaintiffs' motion for summary judgment will be granted in part. The Court will determine the proper remedy following additional briefing from the parties.

The Court will enter an order consistent with this Opinion.

Dated: January 13, 2025                    /s/ Hala Y. Jarbou
                                                                   HALA Y. JARBOU
                                                                   CHIEF UNITED STATES DISTRICT JUDGE